TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-00-00069-CR







LaFrance K. Yarbrough, Appellant


v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT


NO. 0993932, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING







 Appellant LaFrance K. Yarbrough was convicted by a jury of the offense of delivery of a controlled substance,
namely, cocaine, in the amount of less than one gram. See Tex. Health & Safety Code, Ann. § 481.112(1)(a) (West Supp.
2000). The jury found appellant had been previously convicted of two prior felony convictions as alleged and assessed his
punishment at twenty years' imprisonment. See Tex. Penal Code Ann. § 12.42(a)(2) (West Supp. 2000).


Issues


 Appellant advances two issues as follows:


 Issue One: Whether appellant's decision to represent himself was knowingly, intelligently, and competently made
[as required by](1) the Sixth and Fourteenth Amendments to the United States Constitution.

 Issue Two: Whether trial court erred in allowing appellant to represent himself at trial.



 The two issues are interrelated and shall be considered together. We will affirm.


Facts Concerning The Offense


 The sufficiency of the evidence to sustain the conviction for constructive delivery of cocaine of less than one gram
is not challenged. Suffice it to say, the record reflects overwhelming evidence of appellant's guilt. Austin Police Officer
Kenneth Connor was working as an undercover agent on April 6, 1999 in the "Craigwood/MLK area" of east Austin. Officer
Connor was dressed in mufti and was driving an unmarked automobile with a video camera. Connor related that in the afternoon
of the day in question, appellant hollered at him. Connor stopped his vehicle and then pulled up close to appellant. When
appellant asked Connor what he wanted, Connor replied in street language, "a 20," meaning a rock of cocaine. A young man,
later identified as Trent Yarbrough, appellant's son, approached the vehicle. Appellant instructed Trent to give Connor "a 20,"
which Trent did in exchange for $20 from Connor. The video-tape introduced into evidence confirmed most of Officer Connor's
testimony. The chain of custody of the substance obtained by Officer Connor was established. The Austin Police lab chemist
testified that the substance was crack cocaine weighing 0.09 grams.


The Right to Self-Representation


 Appellant's two issues present Faretta v. California, 422 U.S. 806 (1975), questions. To be constitutionally
effective, the decision to represent one's self must be made (1) competently, (2) knowingly and intelligently, and (3) voluntarily. 
See Godinez v. Moran, 509 U.S. 389, 400-01 (1993); Collier v. State, 959 S.W.2d 621, 625 (Tex. Crim. App. 1997). The
decision to waive counsel and proceed pro se is made knowingly and intelligently "if it is made with a full understanding of the
right to counsel, which is being abandoned, as well as the dangers and disadvantages of self-representation." Collier, 959
S.W.2d at 626 (citing Faretta, 422 U.S. at 834-36). "The decision is made 'voluntarily' if it is uncoerced." Id. Moreover, a
defendant's choice of self-representation is not involuntary because of his dissatisfaction with his court-appointed counsel. See
Barnes v. State, 921 S.W.2d 881, 882 (Tex. App.--Austin 1996, pet. ref'd). 

 An accused, in order to competently and intelligently invoke his Sixth Amendment right to represent himself,
should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows
what he is doing and his choice is made with eyes open." Faretta, 422 U.S. at 835. While the choice of self-representation must
be knowingly and intelligently made, it need not be wise. Indeed, an accused must be permitted to conduct his own defense,
even to his detriment, if it is an informed decision. See Scarbrough v. State, 777 S.W.2d 83, 92 (Tex. Crim. App. 1989).


 [T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to waive
the right, not the competence to represent himself. In Faretta v. California, 442 U.S. 806, 95 S.Ct. 2525, 45
L.Ed.2d 562 (1975), we held that a defendant choosing self-representation must do so "competently and
intelligently," id., at 835, 95 S.Ct., at 2541, but we made it clear that the defendant's "technical legal knowledge"
is "not relevant" to the determination whether he is competent to waive his right to counsel, id., at 836, 95 S.Ct.,
at 2541, and we emphasized that although the defendant "may conduct his own defense ultimately to his own
detriment, his choice must be honored," id., at 834, 95 S. Ct. at 2541. Thus, while "[i]t is undeniable that in
most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled
efforts," ibid., a criminal defendant's ability to represent himself has no bearing upon his competence to choose
self-representation.



Godinez, 509 U.S. at 399-400.

 When an accused asserts his right to self-representation, a trial court need follow no "formula questioning" or
particular "script" to assure the court that a defendant is asserting this right with his eyes open. Burgess v. State, 816 S.W.2d
424, 428 (Tex. Crim. App. 1991). The only requirement is that the record "contain[s] proper admonishments concerning pro
se representation and any necessary inquiries of the defendant so that the trial court may make 'an assessment of his knowing
exercise of the right to defend himself.'" Id. See also Halliburton v. State, 928 S.W.2d 650, 652 (Tex. App.--San Antonio
1996, pet. ref'd).

 "In the end, however, a defendant must be allowed to represent himself 'if he truly wants to do so.' Farretta,
supra, 422 U.S. at 817, 95 S. Ct. at 2532." Blankenship v. State, 673 S.W.2d 578, 584 (Tex. Crim. App. 1984).


Background - Exercise of the Right


 Appellant was arrested on April 20, 1999. Counsel was appointed for him on April 26, 1999. The first
indictment was returned on July 26, 1999. Appellant was reindicted on August 24, 1999. On September 26, 1999, appellant
filed a pro se motion for substitution of appointed counsel claiming lack of communication, a one-time jail visit, and failure of
counsel to apply "himself to seeking the truth." The motion was denied. On November 4, 1999, during a pretrial hearing,
appellant requested the right to represent himself and in response to the trial court's inquiry, acknowledged that he knew "the
dangers of doing that." The trial court pointed out that the number of prior convictions alleged (seven at that time) indicated
that appellant was facing a long time in prison and that self-representation was "a very dangerous thing to do." The trial court
asked appellant "to sleep on it" and "think long and hard" before insisting on self-representation because it was a "big, big, big
risk." Appellant was told that his court-appointed counsel was an experienced attorney who knew the rules and knew how to
select a jury. On November 12, 1999, the trial court again inquired into appellant's desire and determined that appellant
understood the charge against him and the range of punishment in view of the indictment's allegations; that appellant had
communicated with his attorney about the offense and the facts behind it; that appellant was forty-two years old, had graduated
from high school, and had taken college courses while he was in the military for twelve years; that later he worked at Pizza Hut
and Brake Check, and had his own business for six months; that he was competent and did not have "delusions or anything";
that in prison he had seen a psychiatrist for depression and anxiety attacks; and that he was on medication, and "all those
problems have been medically taken care of."

 Appellant told the court that he was having a communication problem with his court-appointed counsel; that he
had been searching in law books for cases similar to his; that it "just would get too complicated" for his attorney to read "the
thoughts coming out of my mind" and ask the proper questions; and that he could ask the questions in a clear manner. Appellant
denied that he wanted to represent himself in order to get a lighter sentence or arouse sympathy in the jurors' minds. He denied
coercion or being forced to request self-representation.

 Appellant briefly outlined the trial procedure for the trial court but acknowledged he had little knowledge of the
rules of evidence. Appellant assured the trial court that he knew he would have to follow the rules of law if he acted as his own
counsel. He stated that he would feel better if the case was in his hands. Appellant told the trial court that he had had counsel
at the time of his prior convictions.

 At this point, the trial court advised appellant of his right to counsel, which would have to be waived if appellant
wanted to proceed pro se. Appellant then executed a written waiver of the right to counsel. See Tex. Code Crim. Proc. Ann.
art. 1.051(g) (West Supp. 2000). The trial court informed appellant that he could withdraw the waiver at any time. In response
to appellant's request for "co-counsel," the trial court designated court-appointed counsel as stand-by counsel who would act in
an advisory capacity and explain courtroom procedure and rules of evidence when requested. Counsel was instructed and agreed
to do legal research for appellant. The trial court then ordered the jail authorities to make legal research material available to
appellant. Again, appellant was warned of the "bad results" that normally followed self-representation and was told that he
would be facing a trained and experienced prosecutor. Appellant persisted in asserting his right to self-representation. 

 The trial court ordered that the State's file be made available to appellant as well as the juvenile file on his son,
Trent. The video-tape was to be shown to appellant a second time. In addition, the trial court ordered another chemical analysis
of the substance by a different agency at the request of appellant, and appointed an investigator for appellant.



Appellant's Argument


 Appellant argues that neither his decision to waive the right to counsel nor to represent himself were intelligently
and knowingly made, and thus, it was error for the trial court to accede to his decisions. His claims concerning these matters
are intertwined and somewhat difficult to untangle.

 Appellant had taken college courses, served in the military for twelve years, and at one time operated his own
business. He made clear to the court that he wanted to abandon his right to appointed counsel and represent himself. The
appellant executed a written waiver of counsel in accordance with article 1.051(g) stating in part that he understood his right
as an indigent to have appointed counsel and requesting his right to proceed without counsel. The record is clear that appellant,
with prior courtroom experience represented by counsel, voluntarily, knowingly, and intelligently waived his known right to
counsel in his quest for self-representation. No error is shown in permitting appellant to waive his right to counsel.

 We now focus upon whether appellant was properly advised of the dangers and disadvantages of self-representation. Appellant does not deny he wanted and requested the right to represent himself. No particular admonishments,
"script," or litany of questions is required for a trial court to follow to assure that a defendant is asserting his right to self-representation with his eyes open. Burgess, 816 S.W.2d at 428. The record is clear, without reiteration, that proper
admonishments were given concerning pro se representation and sufficient inquiries were made of appellant so that the trial court
could make an assessment of appellant's knowing exercise of his constitutional right of self-representation. 

Contentions to the Contrary


 Appellant, however, advances contentions to the contrary. We shall consider these, but not necessarily in the
order urged by appellant. First, we turn to appellant's claims that the trial court failed to discuss defenses to the offense charged
in the indictment and to discuss possible mitigating circumstances. Appellant relies upon Blankenship, 673 S.W.2d at 583 
(quoting Von Moltke v. Gillies, 332 U.S. 708, 723 (1948)). Von Moltke involved a federal habeas corpus proceeding following
a guilty plea based on claims of mistaken advice from the FBI and entry of the plea without the assistance of counsel or an
understanding waiver of the right to counsel. There, the court indicated that a waiver of the right to counsel must be made by
the defendant with an apprehension of the nature of the offense, range of punishment, and "possible defenses to the charges and
circumstances in mitigation thereof." Von Moltke, 332 U.S. at 723. The right to self-representation was not involved.

 If the Blankenship opinion can be read as requiring the trial court to inform the accused, who has asserted his right
of self-representation, of possible defenses and mitigating circumstances, we believe that the interpretation is overbroad on
practical and reliability grounds in view of the trial court's position. The trial court cannot be the legal advisor to either the State
or the defense. In most cases, the trial court will not know the facts of the case and could not, properly or improperly, advise
the defendant of all possible defenses or suggest mitigating circumstances. Moreover, appellant has not claimed or shown that
there were possible defenses or mitigating circumstances of which he should have been informed by the trial court. No harm
is shown. 

 Appellant's other contentions are that (1) there was a lack of consultation time (between appellant and his counsel)
before and during the trial; (2) there was a failure to provide appellant with access to a law library; and (3) there was a failure
to provide adequate time to prepare a defense. Appellant's ability to represent himself at trial has no bearing on his competence
to choose self-representation and is, of course, not relevant to the issues presented on appeal. Nonetheless, we will discuss the
contentions.

 First, appellant urges that he and his attorney did not have sufficient time to consult before and during trial. This
contention seems to be based on appellant's own statement during the pretrial hearing on November 12, 1999, that he had
consulted with his then-appointed counsel "very briefly." After appellant exercised his constitutional right of self-representation,
he became his own lawyer. Appellant's "during trial" argument seems to have little foundation. Appellant is obviously referring
to his stand-by counsel. An accused has no absolute right to hybrid representation. See McKaskle v. Wiggins, 465 U.S. 168,
183 (1984); Scarbrough, 777 S.W.2d at 92; Landers v. State, 550 S.W.2d 272, 280 (Tex. Crim. App. 1977). A trial court may,
in its discretion, however, permit both counsel and accused to jointly participate in the case. See Webb v. State, 533 S.W.2d
780, 784 n.2 (Tex. Crim. App. 1976); 41 George E. Dix & Robert O. Dawson, Criminal Practice and Procedure, § 24.33 at
577 (Texas Practice 1995) (hereinafter Dix). In the instance case, the trial court in its discretion appointed stand-by counsel to
assist appellant if he should seek such help. See McKaskle, 465 U.S. at 170; Scarbrough, 777 S.W.2d at 92; Dix § 24.34 at
578. This was done at appellant's request. If it be appellant's contention that "during trial" he did not have sufficient time to
consult with stand-by counsel, he has failed to point out where in the record he requested time to consult with counsel and that
his request was refused. See Tex. R. App. P. 38.1(h). Appellant has not cited any authorities to support his claim. We find
no merit in this contention.

 Next, appellant contends that there was a failure to provide him access to a law library. The exercise of
appellant's right to self-representation was not conditioned upon this matter. Cf. Scarbrough, 777 S.W.2d at 93. We are not
directed to any part of the record where an objection or request was made on the basis now urged. No authorities are cited, and
no showing is made how this contention bears on the issues presented. See Tex. R. App. P. 38.1(h). Appellant was
incarcerated, and the trial court entered an order that legal research material be made available to him. Stand-by counsel was
instructed and agreed to do legal research upon appellant's request.

 Still further, appellant contends that he "did not have enough time to learn the law, understand the rules and
procedures and prepare a defense."(2) Appellant does not tell us how much time would have been required for him to "learn the
law" or even what defense he had to urge. Further, appellant does not explain why he, with the advice of his stand-by counsel,
did not file a motion for continuance based on the grounds now advanced. This and the other points of error are all without
merit.


 The trial court repeatedly tried to impress upon appellant the extreme gravity of his request to proceed pro se and
the likelihood that it was a serious mistake. Under the record before us, appellant affirmatively waived this right to counsel and
voluntarily decided to represent himself competently, intelligently, and knowingly after being fully advised of the dangers and
disadvantages of self-representation. The trial court did not err in allowing appellant to proceed pro se. After the exercise of
appellant's constitutional right, the careful trial court took many steps to insure appellant a fair trial.

 Appellant's two issues are overruled. The judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Justices B. A. Smith, Yeakel and Onion*

Affirmed

Filed: October 12, 2000

Do Not Publish











* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. See Tex. Gov't Code
Ann. § 74.003(b) (West 1998).

1. Added to clarify the issue as stated by appellant and in accordance with the argument advanced in his appellate brief.
2. The trial court is not obligated to assess a defendant's technical legal knowledge, and such knowledge is not relevant
to an assessment of his knowing exercise of the right to represent himself. See Geeslin v. State, 600 S.W.2d 309, 313 (Tex.
Crim. App. 1980).


ent time to consult before and during trial. This
contention seems to be based on appellant's own statement during the pretrial hearing on November 12, 1999, that he had
consulted with his then-appointed counsel "very briefly." After appellant exercised his constitutional right of self-representation,
he became his own lawyer. Appellant's "during trial" argument seems to have little foundation. Appellant is obviously referring
to his stand-by counsel. An accused has no absolute right to hybrid representation. See McKaskle v. Wiggins, 465 U.S. 168,
183 (1984); Scarbrough, 777 S.W.2d at 92; Landers v. State, 550 S.W.2d 272, 280 (Tex. Crim. App. 1977). A trial court may,
in its discretion, however, permit both counsel and accused to jointly participate in the case. See Webb v. State, 533 S.W.2d
780, 784 n.2 (Tex. Crim. App. 1976); 41 George E. Dix & Robert O. Dawson, Criminal Practice and Procedure, § 24.33 at
577 (Texas Practice 1995) (hereinafter Dix). In the instance case, the trial court in its discretion appointed stand-by counsel to
assist appellant if he should seek such help. See McKaskle, 465 U.S. at 170; Scarbrough, 777 S.W.2d at 92; Dix § 24.34 at
578. This was done at appellant's request. If it be appellant's contention that "during trial" he did not have sufficient time to
consult with stand-by counsel, he has failed to point out where in the record he requested time to consult with counsel and that
his request was refused. See Tex. R. App. P. 38.1(h). Appellant has not cited any authorities to support his claim. We find
no merit in this contention.

 Next, appellant contends that there was a failure to provide him access to a law library. The exercise of
appellant's right to self-representation was not conditioned upon this matter. Cf. Scarbrough, 777 S.W.2d at 93. We are not
directed to any part of the record where an objection or request was made on the basis now urged. No authorities are cited, and
no showing is made how this contention bears on the issues presented. See Tex. R. App. P. 38.1(h). Appellant was
incarcerated, and the trial court entered an order that legal research material be made available to him. Stand-by counsel was
instructed and agreed to do legal research upon appellant's request.

 Still further, appellant contends that he "did not have enough time to learn the law, understand the rules and
procedures and prepare a defense."(2) Appellant does not tell us how much time would have been required for him to "learn the
law" or even what defense he had to urge. Further, appellant does not explain why he, with the advice of his stand-by counsel,
did not file a motion for continuance based on the grounds now advanced. This and the other points of error are all without
merit.


 The trial court repeatedly tried to impress upon appellant the extreme gravity of his request to proceed pro se and
the likelihood that it was a serious mistake. Under the record before us, appellant affirmatively waived this right to counsel and
voluntarily decided to represent himself competently, intelligently, and knowingly after being fully advised of the dangers and
disadvantages of self-representation. The trial court did not err in allowing appellant to proceed pro se. After the exercise of
appellant's constitutional right, the careful trial court took many steps to insure appellant a fair trial.

 Appellant's