# NO. 12-17-00228-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MARK MATTHEW DE ROUVILLE,* *APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *CHEROKEE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Mark Matthew Derouville appeals his conviction for criminal trespass. Appellant raises two issues on appeal. We reverse and remand.

## BACKGROUND

On December 28, 2015, Appellant and James MacPherson went into Alto Parts Plus, an auto parts store, to buy a sawmill battery and to test a car battery. While in the store, they conversed with the salesperson, Cheyenne Deal. The store's owner, Cynthia Hicks, observed Cheyenne looking uncomfortable and formulated a reason for Cheyenne to leave the conversation. Hicks asked the men if she could assist them. At that time, Appellant began singing. J.R. Altum, the district manager, was in the store that day and told Appellant that singing was not appropriate in a place of business and asked the men to leave. After Hicks told Appellant and MacPherson that Altum was the district manager, they agreed to go outside.

While the men were outside, Cheyenne called her father, Tommy Deal, because she was upset by her conversation with Appellant. Tommy rushed to the store. When he arrived, Appellant and MacPherson were in the parking lot speaking with Altum. Tommy grabbed Appellant by the shirt and yelled at him. At the same time, Hicks ran out of the store and yelled at Appellant and MacPherson to leave her property. She grabbed Tommy to prevent any further

altercation.  Appellant and MacPherson did not leave, which prompted Hicks to ask an employee to call the police.  When the police arrived, Appellant and MacPherson were standing in the parking lot of the gas station adjacent to the auto parts store.  The men were arrested after the police chief spoke with Hicks.

Appellant was charged by information with criminal trespass.  At the pretrial hearing, Appellant informed the trial court of his wish to waive his rights to a jury trial and to counsel.  Following a bench trial, the trial court found Appellant guilty and sentenced him to confinement for ninety days.  This appeal followed.

<h2 style="text-align:center">SUFFICIENCY OF THE EVIDENCE</h2>

In his second issue, Appellant contends the evidence is legally insufficient to support his conviction.  Specifically, he argues that the evidence was insufficient to prove beyond a reasonable doubt that he remained on the property of Alto Parts Plus after being given notice to leave.  We address this issue first because, if sustained, Appellant would be entitled him to an acquittal rather than a new trial.  *See **Rains v. State***, 604 S.W.2d 118, 120 (Tex. Crim. App. 1980).

## Standard of Review and Applicable Law

In Texas, the ***Jackson v. Virginia*** standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt.  ***Brooks v. State***, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).  When reviewing the sufficiency of the evidence after a bench trial, we apply the same standard that is applied in an appeal from a jury trial.  *See **Robinson v. State***, 466 S.W.3d 166, 173 (Tex. Crim. App. 2015).  The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  ***Jackson v. Virginia***, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979).  This standard gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  ***Padilla v. State***, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010).  The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony.  ***Brooks***, 323 S.W.3d at 899.

2

When the record supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated equally. *Id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). A conclusion of guilt can rest on the combined and cumulative force of all the incriminating circumstances. *Hernandez v. State*, 190 S.W.3d 856, 864 (Tex. App.–Corpus Christi 2006, no pet.).

A person commits the offense of criminal trespass if the person enters or remains on or in property of another, including residential land, without effective consent and the person (1) had notice that the entry was forbidden, or (2) received notice to depart but failed to do so. TEX. PENAL CODE ANN. § 30.05(a) (West Supp. 2016). "Notice" means oral or written communication by the owner or someone with apparent authority to act for the owner. *Id*. § 30.05(b)(2). "Residential land" means real property improved by a dwelling and zoned for or otherwise authorized for single-family or multifamily use. *Id*. § 30.05(b)(11). "Consent" means assent in fact, whether express or apparent. *Id*. § 1.07(11) (West Supp. 2016). "Effective consent" includes consent by a person legally authorized to act for the owner. *Id*. § 1.07(19). "Consent" is not effective if given by a person the actor knows is not legally authorized to act for the owner. *Id*. § 1.07(19)(B).

## Analysis

On appeal, Appellant argues the evidence is legally insufficient to show beyond a reasonable doubt that he committed criminal trespass. He contends that "[w]hen Hicks told them that they needed to leave and Altum directed them to step outside with him, Appellant and MacPherson complied[;]" thus, he maintains that no criminal trespass occurred at that time. He further contends that, if he did receive notice, the notice was "rescinded when Appellant was engaged to stay on the property by someone [Altum] with apparent authority to consent for him to do so." According to Appellant, after he and MacPherson exited the store with Altum, he left the premises and went to the gas station parking lot after Hicks came outside and told the men to leave.

According to the record, Appellant and MacPherson went to Alto Parts Plus on December 28, 2015, to buy a battery for a sawmill. While in the store, the men engaged in a conversation

3

with the salesperson, Cheyenne. After observing Cheyenne visibly upset, Hicks, the store's owner, created a reason for Cheyenne to leave the conversation and offered to assist the men with their purchase. Appellant then began singing in the store. Altum, the district manager, asked Appellant to cease singing and asked the men to go into the parking lot with him. Appellant and MacPherson complied and spent at least fifteen minutes conversing with Altum about various topics. At no time during that conversation did Altum ask them to leave the property.

In the meantime, Cheyenne called her father, Tommy, because she was upset about her conversation with Appellant and MacPherson. Tommy rushed to the store to confront the men who had upset Cheyenne. When Hicks saw Tommy arrive, she rushed outside in an attempt to prevent an altercation. Tommy yelled at Appellant and MacPherson and grabbed Appellant by the shirt. Hicks separated the men and yelled at Appellant and MacPherson to leave the premises. When Appellant and MacPherson did not leave, Hicks asked an employee to call the police. According to Hicks, the men did not leave her property until the police arrived.

Alto Chief of Police Jeremy Jackson responded to the disturbance call. When he arrived, Appellant and MacPherson were standing in the gas station parking lot that adjoined Hicks's store. He arrested Appellant and MacPherson after Hicks told him that she had asked them to leave several times and they failed to do so. Appellant and MacPherson testified that they were in the gas station parking lot either during their conversation with Altum or moved there shortly after being confronted by Tommy.

According to Appellant, he was invited to stay on the premises by Altum, the district manager, and therefore had no notice to leave the property. However, the jury heard evidence that after being invited into the parking lot, the store's owner, Hicks, told them "numerous times" to leave her property and the men failed to comply with her request. As the owner, Hicks clearly had greater authority than did Altum. Despite telling the men to leave, Hicks specifically testified that the men did not leave until the police arrived. The jury was entitled to credit Hick's testimony and disregard contrary testimony. *See* **Padilla**, 326 S.W.3d at 200. From this evidence, the factfinder reasonably could have determined that Appellant was given notice to leave Alto Parts Plus and failed to do so. *See* TEX. PENAL CODE ANN. § 30.05. Regarding whether Appellant was standing on Hicks's property or the gas station property when she asked him to leave, it is the factfinder's province to resolve any conflicts in the record, and we must

4

presume that it did so in favor of the prosecution.  *See Clayton*, 235 S.W.3d at 778; *Robles v. State*, No. 04-16-00434-CR, 2017 WL 1902053, at *2 (Tex. App.—San Antonio May, 10, 2017, no pet.)  (mem. op., not designated for publication).  Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found each element of criminal trespass beyond a reasonable doubt.  *See* TEX. PENAL CODE ANN. § 30.05(a); *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Brooks*, 323 S.W.3d at 912.  We overrule Appellant's second issue.

## SELF-REPRESENTATION

In his first issue, Appellant contends the trial court erred by allowing him to waive his right to counsel without properly admonishing him.  He argues that his waiver was not made knowingly and intelligently and, as a result, he was denied his right to counsel.

### Applicable Law

"In all criminal prosecutions, the accused shall enjoy the right to ... have the Assistance of Counsel for his defence."  U.S. CONST. amend. VI. The right to counsel is a fundamental right, and the "[c]ourts indulge every reasonable presumption against waiver and do not presume acquiescence in the loss of fundamental rights."  *Williams v. State,* 252 S.W.3d 353, 356 (Tex. Crim. App. 2008).  But if a criminal defendant elects to proceed without counsel, he has a constitutional right to do so.  *See Indiana v. Edwards,* 554 U.S. 164, 170, 128 S. Ct. 2379, 2383, 171 L. Ed. 2d 345 (2008); *Faretta v. California,* 422 U.S. 806, 819–20, 95 S. Ct. 2525, 2533, 45 L. Ed. 2d 562 (1975).  Several benefits associated with the right to counsel are relinquished upon a defendant's invocation of his right to self-representation.  *See Faretta,* 422 U.S. at 835, 95 S. Ct. at 2541; *see also Williams,* 252 S.W.3d at 356.  To be constitutionally effective, a waiver of the right to counsel must be made (1) competently, (2) knowingly and intelligently, and (3) voluntarily.  *Moore v. State,* 999 S.W.2d 385, 396 (Tex. Crim. App. 1999).

The relevant question is whether the defendant was competent to waive the right to counsel, not whether he was competent to represent himself.  *Indiana,* 554 U.S. at 172, 128 S. Ct. at 2384; *see also Dunn v. State,* 819 S.W.2d 510, 523 (Tex. Crim. App. 1991).  Generally, the standard for waiving the right to counsel is no higher than that for competency to stand trial.  *Chadwick v. State,* 309 S.W.3d 558, 560 (Tex. Crim. App. 2010).  In Texas, a defendant is competent to stand trial if he has sufficient present ability to consult with his lawyer with a

reasonable degree of rational understanding or a rational and factual understanding of the proceedings against him. *Fuller v. State,* 253 S.W.3d 220, 228 (Tex. Crim. App. 2008). A competency determination is required only when there is sufficient evidence to create a bona fide doubt as to whether the defendant meets the test of legal competence. *Moore,* 999 S.W.2d at 393. Evidence is sufficient to create a bona fide doubt if it shows recent severe mental illness, at least moderate retardation, or truly bizarre acts by the defendant. *Id.*

The decision to waive counsel and proceed pro se is made knowingly and intelligently if it is based on a full understanding of the right to counsel, which is being abandoned, as well as the dangers and disadvantages of self-representation. *Collier v. State,* 959 S.W.2d 621, 626 (Tex. Crim. App. 1997). A defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta,* 422 U.S. at 835, 95 S. Ct. at 2541 (quoting *Adams v. ex. rel. McCann*, 317 U.S. 269, 279, 635 S. Ct. 236, 242, 87 L. Ed. 268 (1942)); *Williams,* 252 S.W.3d at 356. No formulaic questioning or particular script is required for a trial court to assure itself that an accused has asserted his right to self-representation with eyes open. *Burgess v. State,* 816 S.W.2d 424, 428 (Tex. Crim. App. 1991). A valid waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments, possible defenses to the charges, any mitigating circumstances, and all other facts essential to a broad understanding of the whole matter. *Blankenship v. State*, 673 S.W.2d 578, 583 (Tex. Crim. App. 1984). Furthermore, the trial judge must inform the defendant that there are technical rules of evidence and procedure and he will not be granted any special consideration solely because he asserted his pro se rights. *Williams,* 252 S.W.3d at 356.

A denial of the constitutional right to trial counsel is a structural defect that affects the framework of the trial. *Id.* at 357. Therefore, when the right is violated, prejudice is presumed because the trial has been rendered inherently unfair and unreliable. *Id.* When the record does not affirmatively show that the defendant was sufficiently admonished, it is reversible error and not subject to a harm analysis. *Id.*

**Analysis**

At a pretrial hearing, Appellant informed the trial court that he wished to waive his right to a jury trial and his right to counsel. Appellant explained to the trial court that he wished to represent himself because he "just want[ed] to tell the truth," and that he "believe[d] the truth

6

will be generally heard." He also told the court that he previously represented himself in criminal trials. The trial court asked Appellant about his age, education, and mental background, if he was aware that there are disadvantages to not having an attorney, and asked if he was aware of the nature of the charges against him, the legal defenses available to him, courtroom procedures, and the rules of evidence. Appellant responded that he was aware of the charges and the possible punishment range. When asked if he was aware of possible defenses, Appellant responded that he "just know[s] the truth," but was unaware of legal strategy. He also responded that he felt familiar enough with how a courtroom operates to be competent in that area. Based on these answers, the trial court allowed Appellant to represent himself.

Appellant contends that he was not properly admonished regarding the disadvantages of self-representation, the charges and range of punishment were never specifically addressed, and he was not cautioned that he would receive no special consideration for not knowing the rules of evidence and procedure. As a result, he urges that his waiver was not knowingly or intelligently made.

As previously discussed, while there is no particular script required for admonishing a defendant, the trial judge must inform the defendant that he will not be granted any special consideration or relief from the technicalities of the rules of evidence and procedure solely because he elects to appear pro se. *See Williams,* 252 S.W.3d at 356; *see also Burgess*, 816 S.W.2d at 428. Additionally, waiver must be made with a full understanding of the dangers and disadvantages of self-representation. *See Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541; *see also Collier*, 959 S.W.2d at 626. In *Buster v. State,* 144 S.W.3d 71 (Tex. App.—Tyler 2004, no pet.), this Court determined that a defendant had been improperly and inadequately admonished because the trial judge failed to: (1) advise Buster of the range of allowable punishments or of possible defenses to the charges and mitigating circumstances; and (2) specifically admonish Buster that he would not be granted any relief from the technicalities of the rules of evidence and procedure.[1] *Buster,* 144 S.W.3d at 77-78.

Similarly, in the present case, the trial court asked Appellant whether he knew he was at a disadvantage by representing himself, but did not explain those disadvantages to Appellant. The

---

[1] Although *Buster* utilized a harm analysis, the court of criminal appeals later ruled that the error is reversible and not subject to a harm analysis if the record does not affirmatively show that the defendant was sufficiently admonished. *See Williams*, 252 S.W.3d at 357.

7

trial court asked Appellant if he was aware of courtroom procedure; however, the trial judge did not specifically admonish Appellant that he would not be granted any relief from the technicalities of the rules of evidence and procedure. *See id.* at 77; *see also* **Burgess**, 816 S.W.2d at 427 (admonishment sufficient where trial court elicited the accused's education background and previous self-representation, and advised the accused that the rules of evidence and procedure would apply to him as a lawyer, that it would treat his objections the same as a lawyer, that he would be under the same rules of procedure and conduct required of a lawyer, and that it would not "cut [him] any slack" and would hold him to the same standard as a lawyer); *see also* **Williams***,* 252 S.W.3d at 356; **Blankenship**, 673 S.W.2d at 583. Nor does the record indicate that Appellant was advised of the range of allowable punishments, possible defenses, or any applicable mitigating circumstances. *See* **Williams***,* 252 S.W.3d at 356; **Blankenship**, 673 S.W.2d at 583; **Buster**, 144 S.W.3d at 77. Under these circumstances, we conclude that the trial court inadequately admonished Appellant; consequently, his waiver of counsel was not made knowingly and intelligently and was constitutionally ineffective. *See* **Moore**, 999 S.W.2d at 396; *see also* **Collier**, 959 S.W.2d at 625. Because the record does not affirmatively show Appellant was sufficiently admonished, we sustain Appellant's first issue.

## DISPOSITION

Having sustained Appellant's first issue and overruled his second issue, we *reverse* the trial court's judgment and *remand* the cause for a new trial.

**GREG NEELEY**
Justice

Opinion delivered January 10, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

8



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JANUARY 10, 2018**

**NO. 12-17-00228-CR**

**MARK MATTHEW DE ROUVILLE,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the County Court at Law

of Cherokee County, Texas (Tr.Ct.No. 57665)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the judgment be **reversed** and the cause **remanded** to the trial court **for a new trial** in accordance with the opinion of this court; and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*